### UNITED STATES of America

### v.

### PARAMOUNT PICTURES, Inc., et al.

United States District Court
S. D. New York.
March 13, 1958.

Maurice Silverman, and Maurice S. Binkow, Attys., Dept. of Justice, Washington, D. C., for the United States.

Simpson, Thacher & Bartlett, New York City, for American Broadcasting-Paramount Theatres, Inc. (Albert C. Bickford and Whitney North Seymour, Jr., New York City, of counsel).

PALMIERI, District Judge.

The United States moves for an order construing the Consent Judgment as to the Paramount Defendants, dated March 3, 1949, as modified (Judgment) and for an order enjoining defendant American Broadcasting-Paramount Theatres, Inc. (AB-PT) from taking certain actions alleged to be inconsistent with that judgment.

The motion is brought pursuant to Section IX. C. of the Judgment whereby jurisdiction is retained to enable any of the parties to apply to the Court at any time for orders or directions "necessary or appropriate for the construction, modification or carrying out of the [Judgment or] * * * for the enforcement of compliance therewith * * *."

The facts from which the motion arises are not in dispute. At the time the Consent Judgment was entered as to the Paramount defendants, there were three conventional theatres in Elgin, Ill., all operated by Paramount, namely, the Grove, Crocker and Rialto Theatres. In

addition, there was an independent drive-in theatre, the Starview Outdoor Theatre, which was closed for several months of each year. The Starview offered the only competition of any kind to Paramount. In compliance with Section III. C. 1. of the Judgment, quoted *infra*, AB-PT divested the Grove Threatre in October 1950. In 1953 it repossessed this theatre because of defaults by the purchaser of its lease and in 1955 it again divested by making financial arrangements with the owner of the fee. The Grove Theatre has not been operated since 1953. The Starview has continued to operate and since 1949 has shown first-run pictures.

In 1956, the Rialto Theatre was destroyed by fire, leaving AB-PT with only its Crocker Theatre operating. AB-PT now seeks to replace the Rialto by reacquiring the Grove, asserting its right to do so under Section III. A. 6. (b) of the Judgment[1] which authorizes it, without Court authorization, to replace a theatre which has been physically destroyed or converted to other uses.

The issue before me, essentially, is whether the previously divested Grove Theatre can now be availed of as a "substantially equivalent replacement" for the destroyed Rialto Theatre, within the intendment of the Judgment. I do not believe that it can. Such a reacquisition can only be effected, in my opinion, with permission of the Court, and upon an appropriate showing that it will not unduly restrain competition.

I do not believe any useful purpose can be served by a detailed, word by word analysis of the provisions of the Judgment. The Judgment neither specifically permits nor prohibits reacquisition of a divested theatre to replace one which AB-PT retained under the Judgment.[2] The defendant contends that since the permission granted in Section III. A. 6. (b), supra, to acquire "any theatre" for replacement purposes was without restriction, there was an intentional omission of any prohibition against reacquiring divested theatres, and that this omission was designed to permit the reacquisition the defendant here asserts its right to effect. But the limitation can be spelled out from the basic purpose of the divestiture provisions of the Judgment. That purpose permeates the entire fabric of the Judgment and is set forth in its preamble, at page 2:

"The Paramount defendants, have represented to the plaintiff and to this Court that they propose, for the purpose of avoiding discrimination against other exhibitors and distributors, *promoting substantial independent theatre competition for the Paramount theatres and promoting competition in the distribution and exhibition of films generally,* (1)

---

[1.] Section III. A. of the Judgment enjoins defendant AB–PT:

"6. From acquiring a beneficial interest in any theatre other than those named in paragraph 9 hereof, provided that:

"(a) Until the joint ownerships set forth in paragraph 9 have been completely terminated, as provided for in said paragraph, beneficial interests in theatres may be acquired

"(i) As a substantially equivalent replacement for wholly owned theatres held or acquired in conformity with this judgment which may be lost through physical destruction or conversion to non-theatrical purposes;

※    ※    *    *    *

"(b) After termination of the joint ownerships set forth in paragraph 9 hereof, Paramount or the New Theatre Company may acquire a beneficial interest in any theatre only in the situations covered by paragraphs (i) and (ii) of the preceding sub-section (a) unless the New Theatre Company shall show to the satisfaction of the Court, and the Court shall first find, that the acquisition will not unduly restrain competition." (Footnote omitted.)

[2.] The plaintiff contended generally that such a reacquisition was prohibited by Section III. C. 1. of the Judgment, quoted infra. While the plaintiff did not point to particular language in that section in support of its contention, it should be noted that the section required disposition of one theatre in Elgin, Ill., "to a party not a defendant herein." It was pursuant to this section that AB–PT divested the Grove.

to divorce their domestic exhibition business from their production and distribution business, (2) to divest Paramount Pictures Inc. and the divorced exhibition business of all interest in a minimum of 774 theatres, and (3) to subject themselves and said divorced distribution and exhibition businesses to injunctive provisions, all as hereinafter set forth; * * *." (Emphasis added.)

Moreover, Section III. C. 1. of the Judgment provides as follows:

*"For the purpose of creating substantial motion picture theatre operating competition in the communities hereinafter listed,* Paramount or the New Theatre Company shall dispose of all of the interest of Paramount in at least one half of the following motion picture theatres within one year from the date hereof, and in all of the following motion picture theatres within two years from the date hereof, and each such disposition shall be to a party not a defendant herein or owned or controlled by or affiliated with a defendant herein:

* * * * * *

"One first run theatre in Elgin, Ill. * * *" (Emphasis added.)

Indeed, it was conceded by the defendant upon the argument that the judgment was intended to create competition in the area in question.[3]

The provisions of the Judgment above quoted are basic to the purposes and terms of the Judgment and particularly of its divestiture provisions. These must be read in the light of the express intendment—that of creating competition or opportunities for competition with the defendant in the public interest. The replacement provision relied upon by the defendant relates as much to a theatre property lost by fire as it does to one converted to non-theatrical purposes. Thus, and without intending in any way to impugn the *bona fides* of the defendant here, the provision invoked could become a readily usable device for the recreation of monopoly situations through the reacquisition of the very theatres previously divested in order to eliminate monopoly situations. For instance, under the construction of the Judgment urged by the defendant, the defendant could reestablish its monopoly position in any city by converting a theatre which it has continued to operate, to non-theatrical purposes, and then reacquiring a previously divested theatre. And this could be done without any prior authorization by the Court. To recognize a unilateral, uncontrolled right of a defendant to undo what the Judgment clearly intended, would, under these circumstances, constitute a stultification of its express purposes. The effect of the exercise of such a right on the particular competitive situation in Elgin, Ill., is, of course, irrelevant on this motion which calls for a construction of the Judgment's provisions which would be applicable regardless of what the competitive situation might be in Elgin or elsewhere. Whatever the private interest may be in reacquiring a previously divested theatre without prior Court approval, it must give way to the overriding purpose of creating and promoting substantial independent competition for the defendants.

While I am not overlooking the fact that the Grove Theatre has remained idle and unused for some time, this cannot affect the meaning of Section III. A. 6. (b) of the Judgment, or the defendant's right to invoke it. This being said, the door to reacquisition is not shut. Since the defendant is asserting a right to reacquire the Grove without prior Court approval, there is not now before the Court any appropriate inquiry into the competitive situation in Elgin, Ill., and I express no opinion on that situation. If, however, the defendant should petition the Court for authorization to reacquire the previously divested Grove Theatre, the way to such an inquiry would be opened, and it would thereupon be in-

3. See Record p. 21.

**646**

cumbent upon the defendant to show that the proposed reacquisition would not unduly restrain competition.

Accordingly, the plaintiff's motion is granted. The permission contained in Section III. A. 6. (b) of the Judgment to replace lost theatres without Court approval does not extend to their replacement with previously divested theatres. The plaintiff is directed to submit an order, on notice, construing the Judgment in a manner consonant herewith and enjoining the defendant from reacquiring, without Court order, the Grove Theatre at Elgin, Illinois. This decision is without prejudice to a petition by the defendant, under Section III. A. 6. (b) of the Judgment, for permission to reacquire the Grove Theatre.